# Order

**Michigan Supreme Court**
**Lansing, Michigan**

October 29, 2010

137268

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

MATTHEW JOSEPH SOARES,
      Defendant-Appellee.
_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

SC: 137268
COA: 273333
Lapeer CC: 05-008462-FH

By order of May 27, 2009, the application for leave to appeal the July 24, 2008 judgment of the Court of Appeals was held in abeyance pending the decision in *People v Feezel* (Docket No. 138031). On order of the Court, the case having been decided on June 8, 2010, 486 Mich 184 (2010), the application is again considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we VACATE the judgment of the Court of Appeals and we REMAND this case to the Court of Appeals for reconsideration in light of *Feezel*.

MARKMAN, J. (*concurring*).

I concur with the Court's order remanding to the Court of Appeals for reconsideration in light of *People v Feezel,* 486 Mich 184 (2010). In this case, at the time of the fatal accident, the victim was driving a motorcycle with 11-carboxy-THC in his blood. This metabolite of marijuana indicates recent ingestion of the drug. *Id.* at 210. An expert testified that the amount of the metabolite in the victim's blood suggested that his reaction time might have been slowed. Evidence was also presented that the victim was driving 9-10 miles over the speed limit. In light of these facts, the Court of Appeals should determine whether, under the standards set forth in *Feezel,* "the proofs are sufficient to make a question of fact for the jury" on the question of the victim's gross negligence. *Id.* at 196. While I share the dissent's concerns about the portion of *Feezel* that overruled *People v Derror,* 475 Mich 316 (2006), and which has created problems for law enforcement, see *People v Barkley,* ___ Mich ___ (Docket No. 139194, order entered 10/22/10), this case involves the application of legal standards articulated in *Feezel* which I supported.

CORRIGAN, J. (*dissenting*).

I would grant the prosecutor's application for leave to appeal to address the viability and application of this Court's decision in *People v Feezel,* 486 Mich 184 (2010), and to consider the ruling of the Court of Appeals here that evidence of 11-carboxy-tetrahydrocannabinol (THC) in the victim's blood was relevant evidence.

## THIS COURT'S *FEEZEL* DECISION

The substance 11-carboxy-THC is a metabolite of marijuana indicating recent ingestion of the drug. *Feezel,* 486 Mich at 210. In *Feezel,* this Court concluded that a defendant may not be found guilty of operating a motor vehicle and causing death with the presence of a schedule 1 controlled substance in his body, MCL 257.625(4) and (8), although tests reveal that he had 11-carboxy-THC in his blood at the time of the fatal accident. *Id.* at 211-212. In so holding, the Court overruled in part *People v Derror,* 475 Mich 316 (2006). I joined Justice YOUNG's dissent with regard to this aspect of the *Feezel* opinion because I conclude, as did a majority of the Court in *Derror,* that 11-carboxy-THC is a schedule 1 controlled substance as defined by MCL 333.7212(1)(c) (listing marijuana as a schedule 1 controlled substance) and MCL 333.7106(3) (defining marijuana to include "every compound" and "derivative" of the plant Cannabis sativa L.).

The trouble caused by the *Feezel* decision is worthy of this Court's serious attention. Most significantly, State Police officials report that, in the wake of recent increases in accidents involving drug use, the *Feezel* opinion "leaves law enforcement officers in a legal limbo."[1] In the words of Sgt. Christopher Hawkins, legislative liaison for the State Police, as reported by the Detroit News: "We're in a frustrating situation"; "It's almost like the courts are saying that we can arrest if we find marijuana on you, but it's different if we find marijuana in you." Accordingly, I would grant to consider whether *Feezel* was wrongly decided and whether the clear *Derror* rule—which acknowledged that all derivatives of THC are schedule 1 substances—in fact defied practical workability, as the *Feezel* majority claimed. 486 Mich at 215. In truth, it seems that *Feezel* defies practical workability!

## THE RELEVANCE OF 11-CARBOXY-THC IN THE VICTIM'S BLOOD

The central issue in this case was not whether the defendant had a schedule 1 substance in his blood. The defendant here was intoxicated by alcohol, not marijuana, when he ran a stop sign at a high rate of speed, causing the victim's motorcycle to crash into the defendant's SUV, killing the victim. The defendant was charged with

---

[1] Tom Greenwood, "Ruling clouds pot smoking, driving law," The Detroit News, July 29, 2010, available at <http://detnews.com/article/20100729/METRO/7290387/Ruling-clouds-pot-smoking--driving-law> (accessed August 30, 2010).

manslaughter, MCL 750.321, and operating a vehicle while intoxicated causing death, MCL 257.625(1) and (4). At issue on appeal was whether 11-carboxy-THC in the *victim's* blood was evidence admissible to prove that the victim was grossly negligent and, if so, to relieve the defendant of responsibility for proximately causing the death. Reversing the trial court, the Court of Appeals concluded that this evidence was indeed admissible. But a separate section of this Court's opinion in *Feezel,* which I joined, clearly requires us to conclude that the trial court reasonably excluded the evidence.

In *Feezel* we held that a victim's intoxication may be relevant to whether the victim's gross negligence was a superseding cause of his death. *Feezel*, 486 Mich at 201-202. We stressed, however, that such evidence is not relevant or admissible in all cases. *Id.* at 202. Gross negligence "means wantonness and disregard of the consequences which may ensue." *Id.* at 195 (citation omitted). "Wantonness," in turn, means "'[c]onduct indicating that the actor is aware of the risks but indifferent to the results' and usually 'suggests a greater degree of culpability than recklessness . . . .'" *Id.* at 196 (citation omitted). Mere consumption of an intoxicating substance "does not automatically amount to a superseding cause or de facto gross negligence." *Id.* at 202. Rather, the trial court must "make a threshold determination" in each case with regard to whether gross negligence is even in issue; that is, it must determine whether "the proofs are sufficient to create a question of fact for the jury" on the question of the victim's gross negligence. *Id.* In *Feezel,* this threshold was reached because the victim's observable behavior strongly suggested gross negligence; a witness reported that, when the victim was hit by the defendant's car, the victim was walking down the middle of an unlit road, with his back to oncoming traffic, on a dark rainy night. *Id.* at 188. Indeed, the witness, who drove past the victim just before the accident, reported that she did not see the victim until he was next to her car and that she would not have been able to avoid him if he had been in her lane of the road. *Id.* at 189-190. Accordingly, evidence that the victim was *also* extremely intoxicated by alcohol was relevant to the overall question whether he was so grossly negligent that a jury could conclude that the defendant driver did not proximately cause his death. *Id.* at 199.

I cannot conclude that such threshold evidence was present here. Although the victim may have been driving his motorcycle 9 or 10 miles over the posted speed limit, no direct evidence was admitted that his behavior was otherwise erratic or dangerous, let alone that it suggested wantonness beyond recklessness with disregard of the known risks. Further, although an expert testified that the 17 nanograms per milliliter of 11-carboxy-THC in the victim's blood suggested that his reaction time might have been slowed, the expert could not attest to how intoxicated the victim was; thus the evidence did not clearly establish, as in *Feezel,* that the victim was indisputably highly intoxicated. Accordingly, the trial court did not abuse its discretion in excluding the evidence here. And, in any event, exclusion was harmless because the defendant ran a stop sign at a high rate of speed. The victim could not have avoided this accident regardless of his level of

intoxication.  Thus, any intoxication could not be said to have been the superseding cause of the victim's death.  Accordingly, I would grant the prosecutor's application for leave to appeal on this issue.

YOUNG, J., joins the statement of CORRIGAN, J.

DAVIS, J., not participating.  I recuse myself and am not participating because I was on the Court of Appeals panel in this case.  See MCR 2.003(B).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

October 29, 2010

_Corbin R. Davis_
Clerk

d1026